## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MICHELLE L. RUSHING, | CIVIL ACTION `1:15-cv-05720` |
| Plaintiff, | |
| v. | COMPLAINT |
| BENEFICIAL FINANCIAL I INC., SUCCESSOR BY MERGER TO BENEFICIAL ILLINOIS INC. D/B/A BENEFICIAL MORTGAGE CO. OF ILLINOIS, HSBC MORTGAGE SERVICES, INC., A DELAWARE, and EQUIFAX INFORMATION SERVICES, L.L.C., A GEORGIA LIMITED LIABILITY COMPANY, CORPORATION, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT FOR RELIEF

NOW COMES the Plaintiff, MICHELLE L. RUSHING ("Plaintiff"), by and through her attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, HSBC MORTGAGE SERVICES, INC., A DELAWARE CORPORATION, BENEFICIAL FINANCIAL I INC., SUCCESSOR BY MERGER TO BENEFICIAL ILLINOIS INC. D/B/A BENEFICIAL MORTGAGE CO. OF ILLINOIS and EQUIFAX INFORMATION SERVICES, L.L.C., A GEORGIA LIMITED LIABILITY COMPANY (collectively, "Beneficial") as follows:

## NATURE OF THE ACTION

1. This is an action by a consumer seeking actual, statutory, and punitive damages, attorney fees and costs for Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. and the United States Bankruptcy Code, 11 U.S.C. §524.

1

**JURISDICTION AND VENUE**

2. This action arises under and is brought pursuant to the FCRA and the United States Bankruptcy Code. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1681p (FCRA) and 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United.

3. Venue in this district is proper because each Defendant conducts business in this district and all relevant events occurred in this district. Moreover, Defendants' acts or omissions harmed Plaintiff in this district.

**PARTIES**

4. Plaintiff is a natural person residing in South Holland, Illinois. Plaintiff is a consumer within the meaning of the FCRA as defined by 15 U.S.C. §1681a(c). The Plaintiff is also a debtor as defined by the Bankruptcy Code, 11 U.S.C. §101(13).

**Equifax**

5. Equifax Information Services, L.L.C., ("Equifax") is a corporation incorporated in the state of Georgia and is authorized to do business in the State of Illinois, and is registered with the Illinois Secretary of State with a registered agent located in Illinois.

6. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined by 15 U.S.C. §1681a(p).

7. Equifax is regularly engaged in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

**Beneficial**

8. HSBC Mortgage Services, Inc. ("HSBC"), is a financial institution with headquarters located in Illinois and is authorized to do business in the State of Illinois. HSBC Mortgage Services, Inc. is a parent company to Beneficial Financial I Inc., Successor By Merger To Beneficial Illinois Inc. d/b/a Beneficial Mortgage Co. Of Illinois is a California Corporation.

9. Beneficial Financial I Inc., Successor By Merger To Beneficial Illinois Inc. d/b/a Beneficial Mortgage Co. Of Illinois is a California Corporation with headquarters located in Illinois and is authorized to do business in the State of Illinois.

10. Beneficial is a furnisher of information to Equifax.

## STATEMENT OF FACTS

11. On December 29, 2012, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 12-50696.

12. Beneficial was a properly listed and scheduled creditor in Plaintiff's bankruptcy. *See* Exhibit A, a true and correct copy of Plaintiff's Chapter 13 bankruptcy Schedule D filed with the court.

13. Plaintiff's Schedule D listed Beneficial account number 17246901 ("subject account"). *Id*.

14. The subject account arose from a Beneficial primary mortgage secured by the property commonly known as 16652 Thornton Avenue, South Holland, Illinois 60473 ("Subject Property").

15. The credit bureaus including Equifax were listed on Schedule F of Plaintiff's Bankruptcy Schedules for Notice Purposes. *See* Exhibit B, a true and correct copy of Plaintiff's filed Schedule F.

16. Beneficial and Equifax had actual notice of Plaintiff's bankruptcy. *See* Exhibit C, a true and correct copy of the Bankruptcy Noticing Center's Certificate of Notice establishing service of notice of Plaintiff's bankruptcy on Beneficial and Equifax.

17. Plaintiff filed her Original Plan on January 12, 2013.  The Original Plan contained the following language: "Plaintiff is surrendering the real property located at 16652 Thornton Avenue, South Holland, Illinois to Beneficial Financial I, Inc. in full satisfaction of its claims." *See* Exhibit D, a true and correct copy of the Original Plan.

18. Plaintiff filed an Amended Chapter 13 Plan on March 27, 2013.  The Amended Chapter 13 Plan Contained the following language: "Plaintiff is surrendering the real property located at 16652 Thornton Avenue, South Holland, Illinois to Beneficial Financial I, Inc. in full satisfaction of its claims." *See* Exhibit E, a true and correct copy of the Amended Chapter 13 Plan.

19. Plaintiff filed a Second Amended Chapter 13 Plan on April 22, 2013.  The Second Amended Chapter 13 Plan Contained the following language: "Plaintiff is surrendering the real property located at 16652 Thornton Avenue, South Holland, Illinois to Beneficial Financial I, Inc. in full satisfaction of its claims." *See* Exhibit F, a true and correct copy of the Second Amended Chapter 13 Plan.

20. Plaintiff's Second Amended Chapter 13 plan was confirmed by Judge Janet S. Baer on April 25, 2013. *See* Exhibit G, a true and correct copy of the Order of Confirmation.

21. Plaintiff's completed all payments under her Confirmed Chapter 13 Plan, and was therefore discharged on November 25, 2014. *See* Exhibit H, a true and correct copy of the Discharge Order.

22. Beneficial had actual notice of Plaintiff's discharge. *See* Exhibit I, a true and correct copy of the Bankruptcy Noticing Center's Certificate of Notice establishing service of the Discharge Order on Beneficial.

23. Pursuant to the Discharge Order, Plaintiff is no longer liable on the subject account.

24. At the time of receipt of the notices of discharge from the U.S. Bankruptcy Court, Beneficial became aware that Plaintiff no longer owed an obligation to Beneficial for the subject account.

**Credit Reporting Industry
Practices Relating to Bankruptcy**

25. The credit reporting industry uses the Metro 2 format to report consumer information. *See* http://www.metro2creditreportingsoftware.com/whatisthemetro2format.html.

26. Upon information and belief, Beneficial furnishes information to Equifax in the Metro 2 format.

27. The Consumer Data Industry Association ("CDIA") developed the Metro 2 format. *See* Exhibit J, a true and correct copy of "Purpose and Executive Summary: Key Learnings," at p. 3, excerpted from the Consumer Financial Protection Bureau's ("CFPB") "Key Dimensions and Processes in the U.S. Credit Reporting System: A review of how the nation's largest credit bureaus manage consumer data, dated December 2012 ("CFPB Key Dimensions"), full text available at http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.

28. The CDIA instructs creditors and credit reporting agencies under the Metro 2 format on how to accurately report credit accounts during and after a bankruptcy.

29. The Metro 2 format provides for a status code to indicate debts that are discharged in bankruptcy.

30. According to the CDIA, the "critical piece of displayable information for the bankrupt consumer is the Consumer Information Indicator" ("CII"). The correct CII code in a discharged bankruptcy reflects that the borrower has filed bankruptcy and whether the debt has been discharged. *See* Exhibit K, a true and correct copy of "Frequently Asked Questions and Answers 27," excerpted from the 2011 CDIA Credit Reporting Resource Guide.

## Reporting of Discharge

31. The Correct CII code to denote that consumer accounts have been discharged in bankruptcy is "E." *See* Exhibit L.

32. In addition to receiving Metro 2 information from creditors, Equifax also receives public bankruptcy records from government sources. *See* Exhibit M, a true and correct copy of "Furnishers and Users: 3.2 Public Record Collection," excerpted from CFPB Key Dimensions.

## Plaintiff's First Request for Investigation to Equifax

33. At the time of receipt of the notice of discharge from the U.S. Bankruptcy Court, Defendants became aware that Plaintiff no longer owed any obligation to Beneficial for the subject account.

34. To ensure proper reporting of the discharged debts, on December 15, 2014, Plaintiff sent a dispute to Equifax, requesting that her credit file be updated to reflect a zero balance and discharged status of all accounts discharged in her bankruptcy. Plaintiff attached the relevant bankruptcy documents to her dispute, namely her bankruptcy schedules, Confirmed Chapter 13 Plan, and Discharge Order. See Exhibit N, a true and correct copy of Plaintiff's dispute to Equifax.

35. Plaintiff's dispute stated, in pertinent part:

6

a. "I am enclosing a copy of the Order Discharging Debtor..."

b. "Please update the subject credit file(s) to reflect the discharged status of the debts..."

c. "Report a current balance of '0'" on all discharged accounts..."

d. "To the extent that any of the discharged debts are reporting anything other than a "0" balance, please consider this letter as a dispute…"

e. "…this written notice, as to each creditor listed on the attached Schedules D, E and F." *Id.*

36. Plaintiff sent her dispute to Equifax via certified mail, return-receipt requested. *Id.*

**Equifax's Response to Plaintiff's First Request for Investigation**

37. Pursuant to 15 U.S.C. §1681i(a)(1), Equifax had a duty to conduct a reasonable investigation including contacting the furnishers of information, Beneficial, to verify the disputed information.

38. Upon information and belief, Equifax sent a request for reinvestigation to Beneficial requesting that it verify that the subject account was discharged in bankruptcy.

39. Upon information and belief, Equifax provided Beneficial a numeric code indicating the nature of Plaintiff's dispute through e-OSCAR, its automated dispute system.

40. Beneficial responded to Plaintiff's Investigation Request by removing the late payment history and adding the words "included in bankruptcy." *See* Exhibit O, a true and correct copy of the results of Investigation Request bearing Equifax conformation dated December 29, 2014 ("Investigation Results").

41. By virtue of updating the Beneficial to report as discharged in bankruptcy and deleting the late payments, it can be reasonably inferred that the subject account was previously reported inaccurately.

42. Notwithstanding Plaintiff's dispute, the subject account's trade line information remained inaccurate and incomplete as it continued to report a past due balance.

**Plaintiff's Second Request for Reinvestigation to Equifax**

43. Plaintiff sent a second request for reinvestigation to Equifax, via certified mail, on or about January 21, 2014. *See* Exhibit P, a true and correct copy of Plaintiff's second request for reinvestigation ("Reinvestigation Request ").

44. In her Reinvestigation Request , Plaintiff again requested that Equifax reinvestigate the subject account, stating that the Beneficial Account should be reported as closed and discharged in bankruptcy with a zero balance and no past due amount. Plaintiff attached all relevant bankruptcy documentation to her dispute, establishing the discharged status of the pre-petition debt. *Id*.

45. Pursuant to 15 U.S.C. §1681i(a)(1), Equifax had a duty to conduct a reasonable investigation including contacting the furnisher of information, Beneficial, to verify the disputed information.

46. Upon information and belief, Equifax did not forward Plaintiff's second dispute letter attaching her bankruptcy documentation to Beneficial.

47. On February 18, 2015, Equifax responded to Plaintiff's Reinvestigation Request  by updating the subject account to report as included in bankruptcy and removed the past due amount, however, the tradeline still reflects the past due balance of $4,976.00. *See* Exhibit Q, a true and correct copy of the results of Plaintiff's second request for reinvestigation bearing Equifax confirmation number 5029047683 and dated February 18, 2015 ("Reinvestigation Results ").

48. At all times during the dispute period, any subject account to Beneficial was in fact discharged in Plaintiff's bankruptcy, thus the subject account information was still inaccurate and incomplete following Plaintiff's second reinvestigation request.

**Impact of Continuing**
**Incorrect Reporting on Plaintiff's Credit File**

49. Equifax, at the direction of Beneficial, has recklessly reported inaccurate and incomplete information following Plaintiff's bankruptcy filing in January 2013, despite Plaintiff's repeated requests for reinvestigation.

50. The amount of credit a consumer is currently using is factored into the consumer's credit score. *See* Exhibit R, a true and correct copy "Credit Bureaus, Credit Files, Credit Reports, and Credit Scores: 2.4 Credit Scoring," at p. 10, excerpted from CFPB Key Dimensions.

51. Due to the high balance of the pre-petition debt, the inaccurate reporting on these accounts alone had significant adverse effects on Plaintiff's credit rating and her ability to obtain financing, as it appears from Plaintiff's credit report that the pre-petition debt has not been discharged in bankruptcy and remains outstanding and in default.

52. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of the ability to purchase and benefit from a line credit, the loss of time and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her disputes, and monitoring her credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

53. Plaintiff was denied financing on multiple occasions and could not even obtain a high risk credit card. *See* Group Exhibit S, true and correct copies of letters denying Plaintiff the extension of credit.

54. Defendants' repeated non-compliance with the requirements of the FCRA is indicative of the reckless and willful nature of their conduct in maintaining Plaintiff's credit file.

55. As pled above, the Credit Reporting Industry has procedures and systems in place to promote accurate credit reporting during and after bankruptcy, in compliance with the FCRA.

56. By deviating from the standards established by the credit reporting industry and the CDIA, Defendants have acted with reckless disregard for the FCRA and its mandates to report accurate and complete consumer credit information.

57. It is common knowledge among financial institutions that discharged debt is viewed favorably compared to debt that is delinquent, but collectable.

58. Defendants knew that by only partially correcting the status of the pre-petition debt, while incorrectly reporting the trade line statuses of past due balance and balance due after Plaintiff's bankruptcy, would have a significantly adverse affect on Plaintiff's credit worthiness.

59. It is Defendants' regular business practice to continue reporting disputed information without taking the required investigatory steps to meaningfully verify such information. In Fact as of May 4, 2015, the subject is still reported inaccurately as it lists a past due balance of $4,976.00. *See* Attached Exhibit T, a true and correct copy of Plaintiff's post investigation credit report.

## COUNT I - VIOLATIONS OF THE FCRA BY EQUIFAX

60. Plaintiff realleges and reincorporates paragraphs 1 through 62 above as if fully set out herein.

61. Equifax violated the FCRA 15 U.S.C. §§1681e(b), 1681i(a)(1), 1681i(a)(2), 1681i(a)(4), and 1681i(a)(5) through its actions and inactions relating to Plaintiff's credit file.

62. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit files it published and maintained concerning Plaintiff as demonstrated by its repeated inaccurate reporting of the subject account.

63. The fact that the subject account was not reported as discharged despite the information provided by the plaintiff demonstrates Equifax's lack of compliance with its statutory requirement.

64. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete or correct the information in Plaintiff's credit report.

65. Had Equifax taken *any* steps to investigate Plaintiff's valid disputes, it would have determined that the subject account was in fact discharged; Plaintiff provided Equifax with the relevant documents to establish that Equifax was inaccurately reporting the subject account.

66. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to send all relevant information that it received in Plaintiff's first and second requests for investigation to Beneficial.

67. Had Equifax forwarded the bankruptcy information provided in Plaintiff's first and second requests for investigation, it would have been impossible for Beneficial to reasonably determine that any of the subject account was not discharged in bankruptcy.

68. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received in Plaintiff's first and second requests for investigation.

69. Had Equifax reviewed the disputes and bankruptcy information provided by Plaintiff, it would have been impossible for Equifax to reasonably determine that any of the subject account was not discharged in bankruptcy.

70. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify any information which was the subject of Plaintiff's disputes and which was incorrect or could not be verified.

71. Despite the blatantly obvious nature of the errors, Equifax failed to correct its reporting even after Plaintiff's submission of documents and information establishing that its reporting was incorrect.

72. As pled above, Plaintiff has suffered various types of damage as a result of the conduct, actions, and inaction of Equifax.

73. As pled above, the conduct, actions, and inaction of Equifax were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

74. In the alternative, Equifax was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, MICHELLE L. RUSHING, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.   declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.   ordering the deletion of all adverse credit reporting relating to the subject account;

c.   awarding Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.   awarding Plaintiff statutory damages of $1000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.   awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.   awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. 1681o; and

g.   awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATIONS OF THE FCRA BY BENEFICIAL

75. Plaintiff realleges and reincorporates paragraphs 1 through 77 above as if fully set out herein.

76. Beneficial violated the FCRA 15 U.S.C. §§1681s-2(b)(1)(A), 1681s-2(b)(1)(B), 1681s-2(b)(1)(C), 1681s-2(b)(1)(D), and 1681s-2(b)(1)(E) through its actions and inactions relating to Plaintiff's credit file.

77. Beneficial violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving the multiple requests for investigation from Equifax.

78. Had Beneficial taken *any* steps to investigate Plaintiff's valid dispute, it would have determined that the pre-petition debt was in fact discharged; Plaintiff provided her bankruptcy information in her requests for investigation. Furthermore, this information is public record that is widely available and easily ascertainable.

79. Beneficial violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax relating to Plaintiff's multiple requests for investigation.

80. Had Beneficial reviewed the bankruptcy information provided by Plaintiff, it would have been impossible for Beneficial to determine that any of the subject account was not discharged in bankruptcy.

81. Beneficial violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of the investigation to Equifax.

82. A reasonable investigation by Beneficial would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continued to report on Plaintiff's credit file.

83. Beneficial violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to report the results of the investigation to all other consumer reporting agencies after the finding of inaccurate reporting with respect to the subject account.

84. A reasonable investigation by Beneficial would have confirmed the veracity of Plaintiff's dispute, yet the incorrect information continued to report on Plaintiff's credit file.

85. Beneficial violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the incorrect item of information, with respect to the pre-petition debt.

86. Despite the blatantly obvious errors in Plaintiff's credit file, and Plaintiff's efforts to correct them, Beneficial did not correct the trade lines to report accurately and completely.

87. As pled above, Plaintiff has suffered various types of damage as a result of the conduct, actions, and inaction of Beneficial.

88. As pled above, the conduct, actions, and inaction of Beneficial were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

89. In the alternative, Beneficial was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, MICHELLE L. RUSHING, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. ordering the deletion of all adverse credit reporting relating to the pre-petition debt;

c. awarding Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. awarding Plaintiff statutory damages of $1000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. 1681o;

g. awarding any other relief as this Honorable Court deems just and appropriate.

Dated: June 26, 2015          Respectfully Submitted,
<u>/s/ Penelope N. Bach</u>
Penelope N. Bach, Esq. ARDC#6284659
Counsel for Plaintiff
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188